IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TERRY MONNEYHAN, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:20-cv-01089 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| D.D.C. NASHVILLE, TN et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil rights action under 42 U.S.C. § 1983 arises from pro se and *in forma pauperis* Plaintiff Terry Mooneyhan's pretrial detention in the custody of the Davidson County Sheriff's Office (DCSO) in Nashville, Tennessee. (Doc. No. 10). Plaintiff alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment because Defendants Lieutenant Thomas Conrad, Sergeant Ronnie Davis, Sergeant Marcus Fielden, Sergeant Richard Grant, Sergeant Nicholas Pallak, and Corporal Christopher Wicking (employees of the DCSO) restricted his access to food and failed to provide him with his medically prescribed diet. (Doc. Nos. 10, 11). Now before the Court is Defendants' Motion to Dismiss (Doc. No. 26, "Motion"), supported by an accompanying memorandum of law (Doc. No. 27). Plaintiff filed a response (Doc. No. 32), and Defendants replied (Doc. No. 33). For the reasons that follow, Defendants' Motion will be denied.

I.   **Factual and Procedural Background**

   A.   Factual Background[1]

On September 7, 2020, Wicking filed a disciplinary report stating that he had searched Plaintiff's cell and found homemade wine. (Doc. No. 1). Wicking asked that Plaintiff "be put on a diet restriction" that eliminated bread and fruit from his meals[2] (Doc. No. 11 at 1) and recommended "taking [away] a night[t]ime snack" prescribed to Plaintiff because he suffers from Crohn's Disease and Hepatitis C (Doc. No. 5 at 1). Grant "signed off on the disciplinary" report and approved the changes to Plaintiff's meals. (Doc. No. 11 at 1).

Plaintiff was "restricted [from] all bread and fruit with no alternatives" and did not receive his evening snack for approximately three weeks. (*Id.*). Plaintiff filed grievances and requested assistance from Grant, Fielden, Pallak, Davis, and Conrad to get his normal meals back (Doc. Nos. 10, 11), but "received no help" (Doc. No. 10 at 8) even after the officers "clearly s[aw]" what Plaintiff was being served (Doc. No. 11 at 8). Davis, Grant, and Pallak told Plaintiff that "they didn't know who made the call" to restrict Plaintiff's food and "that[,] as security[,] their job is only to write up disciplinary[ ]" reports. (*Id.*). Plaintiff "suffered from . . . being starved and in a cell 23 hours a day and not allowed to see any authority unless acting out . . . ." (*Id.*). Despite being medically prescribed a diet that included extra calories, Plaintiff ended up "receiving less than

---

[1]   In screening Plaintiff's amended complaint (Doc. No. 10), the Court also considered allegations made in Plaintiff's original complaint (Doc. No. 1) and supplemental filings (Doc. Nos. 5, 11). (Doc. No. 12.) The facts in this memorandum opinion are also drawn from Plaintiff's original and amended complaints (Doc. Nos. 1, 10) and supplemental filings (Doc. Nos. 5, 11) and are presumed to be true for purposes of resolving the Motion. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

[2]   The Court infers that these were suspected ingredients of Plaintiff's contraband brew.

what's recommended[,]" which caused him to suffer weight loss. (Doc. No. 1 at 16). Plaintiff "was being malnourished with each entr[ee] [he] was served[.]" (Doc. No. 11 at 1).

After Plaintiff went "weeks with barely anything on [his] trays[ ] and suffered severe malnourishment," (Doc. No. 1 at 16),"[N]urse Tiffany" visited Plaintiff's cell and "noticed [he] didn't look so good" (*id.* at 15). Plaintiff told Tiffany "all that had happened . . ." and she "stated that 'security' should have never been able to change [Plaintiff's] diet . . . ." (Doc. No. 11 at 2). Tiffany then spoke with Conrad, who "changed his mind" and allowed Plaintiff to have bread, fruit, and his nighttime snack again. (Doc. No. 10 at 8).

B.  Procedural Background

Plaintiff initiated this action on December 18, 2020, by filing a form complaint for civil rights violations that named "D.D.C. [D]etention [C]enter" as the sole defendant. (Doc. No. 1 at 2). On February 4, 2021, the Court granted Plaintiff's application to proceed *in forma pauperis* and screened his complaint (Doc. No. 1) and a supplemental filing (Doc. No. 5) under 28 U.S.C. §§ 1915(e)(2) and 1915A. (Doc. No. 7). The Court found that the Downtown Detention Center was not an entity that could be sued under § 1983 and dismissed Plaintiff's complaint, but granted him thirty days to file an amended complaint that named "an additional defendant or defendants with regard to his Eighth Amendment allegations." (*Id.* at 5).

Plaintiff timely filed an amended complaint[3] (Doc. No. 10) and a supplement thereto (Doc. No. 11). The Court screened these filings and, in doing so, also considered the factual allegations made in Plaintiff's original pleading. (Doc. No. 12). The Court found that Plaintiff had stated

---

3       Plaintiff initially attempted to amend his complaint by filing a new action, *Mooneyhan v. Conrad*, Case No. 3:21-cv-00156, on February 26, 2021. Recognizing that Plaintiff intended the complaint filed in that action as a response to the Court's screening order in this case, the Court directed the Clerk of Court to transfer the complaint filed in that action to this case and to docket it as Plaintiff's amended complaint. (Doc. No. 9).

colorable, non-frivolous Eighth Amendment claims against Wicking, Conrad, Fielden, Grant, Pallak, and Davis in their individual capacities. (*Id.*) Defendants now move to dismiss all claims against them. (Doc. No. 26.)

## II. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There are limits to liberal construction, however, and "courts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

**III.    Analysis**

Defendants argue that the Court should grant their Motion and dismiss Plaintiff's Eighth Amendment claim, pursuant to fed. R. Civ. P. 12(b)(6), for two reasons: (1) Plaintiff (supposedly) fails to state an Eighth Amendment claim, and (2) even if Plaintiff did state a claim, Defendants (supposedly) are entitled to qualified immunity because (supposedly) Plaintiff has not adequately alleged that they violated his clearly established constitutional rights. (Doc. No. 27).[4]

A. <u>Whether Plaintiff states a claim for relief</u>

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege facts sufficient to establish two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law.

---

[4] The Court notes, as a procedural matter, that each of these alleged grounds for dismissal is properly asserted under Rule 12(b)(6). "Although a motion pursuant to Rule 12(b)(6) [generally] invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal [under Rule 12(b)(6)] nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016).

*Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). Plaintiff alleged that Defendants, all DCSO corrections officers, searched his cell, completed a disciplinary report, and thereafter disciplined Plaintiff by depriving Plaintiff of his meals. (*See* Doc. Nos. 10, 11). Construing these allegations liberally, the Court finds that Plaintiff has alleged that Defendants were acting in the course of their official authority when they deprived Plaintiff of meals, and thus, were acting under color of state law. *See Waters v. City of Morristown, Tennessee*, 242 F.3d 353, 359 (6th Cir. 2001) (holding that an officer acts under color of state law when he purports to exercise official authority). The Court now turns to the question of whether Plaintiff has stated a claim that Defendants violated his constitutional rights.

The Eighth Amendment gives incarcerated people "the right to be free from cruel and unusual punishment." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). The same protection extends to pretrial detainees like Plaintiff under the Fourteenth Amendment's Due Process Clause. *Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016) ("[U]nder the Fourteenth Amendment, pretrial detainees are 'entitled to the same Eighth Amendment rights as other inmates.'" (quoting *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994)). Courts therefore analyze deliberate indifference claims brought by pretrial detainees under the Fourteenth Amendment using the same legal framework as employed for those brought by convicted prisoners under the Eighth Amendment. *Id.*

An Eighth Amendment claim contains an objective component and a subjective component. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "First, the deprivation allege must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of

life's necessities. . . . Second, the prison official's state of mind [must be] one of deliberate indifference to inmate health or safety." *Spencer v. Bouchard*, 449 F.3d 721, 727-28 (6th Cir. 2006) (internal quotations and citations omitted). A plaintiff must allege facts that satisfy both the objective and subjective component of an Eighth Amendment claim to survive a Rule 12(b)(6) motion.

i. *Objective Component*

"The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations [of the Eighth Amendment] that are so serious that they deny him 'the minimal civilized measure of life's necessities.'" *Richmond*, 450 F. App'x at 455 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The Eighth Amendment imposes a duty on officials to "provide humane conditions of confinement." *Farmer*, 511 U.S. at 832. This requires, among other things, "ensur[ing] that inmates receive adequate food." *Id.* Those who are in custody must be provided "well-balanced meals, containing sufficient nutritional value to preserve health." *Butler v. Jewell*, No. 88-1834, 1989 WL 16851, at *1 (6th Cir. Feb. 17, 1989) (citing *Green v. Ferrell*, 801 F.2d 765, 770 n.5 (5th Cir.1986)). Isolated deprivations of meals do not rise to the level of an Eighth Amendment violation where the daily nutrition provided is sufficient to maintain normal health. *See Cunningham v. Jones*, 667 F.2d 565, 565–66 (6th Cir. 1982) (finding that providing one meal per day for fifteen consecutive days did not violate the Eighth Amendment where the one meal provided adequate nutrition to sustain normal health for that time period); *but see Foster v. Runnels*, 554 F.3d 807, 812–13 (9th Cir. 2009) (finding that denying plaintiff 16 meals in 23 days was a sufficiently serious deprivation to state an Eighth Amendment claim). In *Richmond v. Settles*, for example, the Sixth Circuit determined that a plaintiff who alleged he had been deprived of meals did not state a viable Eighth Amendment claim because he did "not allege that his health

suffered as a result of not receiving the meals." 450 F. App'x 448, 456 (6th Cir. 2011). However, the Sixth Circuit has also held that a prolonged failure to meet an inmate's medically prescribed diet restrictions may "present[ ] a 'serious' condition" that satisfies the objective prong. *Boles v. Aramark Corr. Servs., LLC*, No. 17-1919, 2018 WL 3854143, at *3 (6th Cir. Mar. 19, 2018) (quoting *Farmer*, 511 U.S. at 834).

Plaintiff alleges that bread and fruit were removed from his meals and not replaced with other food. He also alleges that he did not receive his medically prescribed nighttime snack for around three weeks (that was prescribed because of his Crohn's disease and Hepatitis C). (Doc. Nos. 1, 5, 10, 11.) These dietary changes caused him to become "malnourished" because he was deprived of the carbohydrate calories that he states make up the "main food source" for inmates at DCSO. (Doc. No. 11 at 1). When Nurse Tiffany saw Plaintiff, she "noticed [he] didn't look to[o] well," and she was sufficiently concerned about his health that she asked Conrad to remove the restrictions from Plaintiff's diet. (*Id.* at 2). When viewing these allegations liberally and in consideration of Plaintiff's *pro se* status, Plaintiff has plausibly alleged that he did not receive sufficient food to maintain normal health, *cf. Cunningham*, 667 F.2d at 566, and that "his health suffered as a result of the meal deprivation[,]" *Richmond*, 450 F. App'x at 456. Accordingly, he has alleged facts that demonstrate the objective component of his Eighth Amendment claim.

ii. *Subjective component*

"The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). As the undersigned has explained before, the Sixth Circuit recently held that in the case of pretrial detainees, only recklessness is required to show deliberate indifference on the part of the officials:

> [A] claim of deliberate indifference under the Fourteenth Amendment [which as noted above, is the amendment under which Plaintiff's claim must be analyzed] now has, in the Sixth Circuit at least, a different test for the subjective component. . . . [S]ince late 2021, "the second prong of the deliberate indifference test [the subjective component] applied to pretrial detainees . . . require[s] only recklessness." *See Greene v. Crawford Cty., Mich.*, No. 20-1715, 2022 WL 34785, at *8 (6th Cir. Jan. 4, 2022) (citing Brawner, 14 F.4th at 597). As *Greene* explains, the recognition of this change in the law was some time in the making, and recent scholarship has noted presciently the potential and need for this kind of revisiting of whether any (and, if so, what) subjective component, in addition to an objective component, should be required for Fourteenth Amendment claims. *See* Kate Lambroza, *Pretrial Detainees and the Objective Standard After Kingsley v. Hendrickson*, 58 AM. CRIM. L. REV. 429 (2021).

*Greenway v. Leveck*, No. 3:20-CV-00058, 2022 WL 247860, at *4 n.8 (M.D. Tenn. Jan. 24, 2022).

Plaintiff has sufficiently alleged that each of the Defendants perceived facts from which he or she could infer a substantial risk of harm to him, drew that inference, and recklessly disregarded the risk. *See Farmer*, 511 U.S. at 837. Plaintiff alleges that the incident report completed by Wicking, which Grant approved, "asked that [he] be removed from a regular diet to a no bread no fruit diet along with taking" away Plaintiff's "night[t]ime snack . . . that was prescribed from medical" because of Plaintiff's Crohn's Disease and Hepatitis C. (Doc. No. 5 at 1). This allegation, liberally construed in Plaintiff's favor due to his *pro se* status, *see Erickson*, 551 U.S. at 94, supports an inference that Wicking and Grant were aware of Plaintiff's medically prescribed diet but nevertheless recommended and approved a food restriction, disregarding a substantial risk of harm to Plaintiff.

Moreover, Plaintiff alleges that after the dietary restriction was imposed, the officers "clearly s[aw] [Plaintiff's] meals" and, it is reasonable to infer, perceived the alleged absence of sufficient nutrition. Plaintiff also states that he asked Conrad, Fielden, Davis, Pallak, and Grant for help getting the restriction removed. (Doc. No. 11 at 2). After observing Plaintiff's condition and hearing him "pleading for help," the officers told him that they did not have the authority to make

changes to his meals. (*Id.*). However, after Nurse Tiffany spoke to Conrad, Plaintiff's "diet was changed back to normal and [his] nighttime medical snack was renewed." (*Id.*) Construing these allegations liberally, as it must, the Court finds that Plaintiff has plausibly alleged that the corrections officers had the ability to return Plaintiff to his regular diet but elected not to do so despite perceiving the harm Plaintiff was suffering. Thus, Plaintiff's allegations support a reasonable inference that Fielden, Davis, Pallak, Grant, and Conrad were aware of and disregarded a substantial risk of harm to Plaintiff, or at the very least, acted recklessly in such disregard of the risk of harm to Plaintiff.[5]

Defendants nevertheless argue that Plaintiff has not satisfied the subjective prong because "[c]ourts in this circuit have found that correctional officers, and even prison food service workers, are not responsible for the contents of prisoners' meals, absent specific allegations to the contrary." (Doc. No. 27 at 6-7). But nearly all of the cases Defendants cite for this proposition were decided at summary judgment and not at the pleading stage. *See Payne v. Orton*, No. 1:14-cv-00144, 2016 WL 5404635 (M.D. Tenn. Sept. 27, 2016); *Kelly v. McLain*, No. 08-CV-10448, 2008 WL 4791951 (E.D. Mich. Oct. 28, 2008); *Bowers v. Burnett*, No. 1:08-cv-469, 2009 WL 7729553 (July 27, 2009), *report and recommendation adopted*, 2011 WL 1047343 (Mar. 18, 2011). The only cases cited that involved motions to dismiss are distinguishable. In *Jones v. Correct Care Solutions*, the

---

[5] Additionally, Grant argues that Plaintiff has not pleaded sufficient facts to hold him liable under § 1983 as a supervisor. "In order to succeed on a supervisory liability claim, Plaintiff must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). "While a supervisor must have engaged in 'some active unconstitutional behavior,' that behavior need not be 'active in the sense that the supervisor must have physically put his hands on the injured party or even physically been present at the time of the constitutional violation.'" *Id.* (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 242–43 (6th Cir. 2016)). Here, Plaintiff alleges that Grant authorized the dietary restriction by "sign[ing] off on the disciplinary [report], allowing the [restriction] to apply." (Doc. No. 11 at 1). The allegation that Grant affirmatively authorized the disciplinary action is sufficient to "plausibly allege that [Grant] 'did more than play a passive role in the alleged violations or show mere tacit approval of the goings on.'" *Peatross*, 818 F.3d at 243 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). Accordingly, Plaintiff has stated a plausible claim for supervisory liability against Grant.

plaintiff alleged that he chipped a tooth on a piece of metal in his food and did not allege that the defendant officers were "actively involved in, or even aware of, any allegedly unconstitutional conduct." No. 3:18-CV-297, 2018 WL 4323933, at *3 (W.D. Ky. Sept. 10, 2018). Here, in contrast, Plaintiff alleges that Defendants, by depriving him of meals, were involved in and aware of the allegedly unconstitutional conduct. Further, in *Ingram v. Hall*, No. 3:09-0037, 2009 WL 1971456 (M.D. Tenn. July 7, 2009), another case relied on by Defendants, the court dismissed the Eighth Amendment claims regarding alleged nutritional deficiencies in the plaintiff's meals, because the plaintiff had not alleged that any of the defendants "condoned, encouraged, or participated in the planning, preparation, and delivery of [the p]laintiff's meals." 2009 WL 1971456, at *8. However, in this case, Plaintiff alleges that all Defendants delivered his meals, viewed his malnourished state, and had the ability to return Plaintiff to his regular diet but elected not to do so despite perceiving the harm Plaintiff was suffering. (Doc. Nos. 1, 5, 10, 11). Thus, both of the motion-to-dismiss-stage cases Defendants cite are distinguishable, and do not change the Court's conclusion.

Accordingly, the Court finds that when construing Plaintiff's allegations liberally, Plaintiff has plausibly alleged a claim for violation of his Eighth Amendment rights.

### B. Whether Defendants are entitled to qualified immunity

Finally, Defendants argue that they are entitled to qualified immunity. To survive a motion to dismiss on qualified immunity grounds, a plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was *clearly established* law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis added). The plaintiff also must allege with particularity "facts that demonstrate what each defendant did to violate the asserted

11

Case 3:20-cv-01089 Document 36 Filed 03/16/22 Page 11 of 14 PageID #: 198

constitutional right." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011). "The test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Id.* at 562-63. "Moreover, the allegations must demonstrate that each defendant officer, through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law." *Johnson*, 690 F.3d at 653.

In analyzing the issue of qualified immunity, "[t]he first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Although these two steps may be addressed in either order, both steps must be answered in the affirmative for the plaintiff's claim to proceed. *Id.* (citing *Pearson*, 555 U.S. at 236). If either step is not satisfied, qualified immunity shields the government officer from civil damages. *Id.*

The resolution of the first step actually is foretold by the Court's analysis above as to whether Plaintiff has stated a claim under Section 1983.[6] As discussed above, Plaintiff has alleged

---

[6] As one district court has correctly noted, "[b]ecause the first step of a qualified-immunity analysis is to examine whether the plaintiff has sufficiently alleged that the defendant violated a constitutional or statutory right, [the qualified immunity analysis] overlaps with the issue of whether the plaintiff has stated a claim under § 1983. *Jones v. Walsh*, No. CV152629FLWLHG, 2018 WL 1203472, at *4 n. 4 (D.N.J. Mar. 8, 2018) (citing S*aucier v. Katz*, 533 U.S. 194, 201 (2001)). The overlaps is such that had the Court found above that Plaintiff had failed to state a claim under Section 1983 against a particular Defendant, it necessarily would find additionally and alternatively that such Defendant was entitled to qualified immunity. *See Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) (explaining the overlap between the failure-to-state-a-claim analysis and the qualified immunity analysis and noting that when the plaintiff fails to state a claim against a state-actor defendant, that defendant is entitled to qualified immunity).

facts sufficient to state a claim under § 1983 for violation of his rights under the Eighth Amendment. The first prong of the qualified immunity inquiry is thus met.

Plaintiff has also pleaded facts sufficient to meet the second prong of the qualified immunity analysis. It was clearly established well before 2020 that a prison official violates the Eighth Amendment when he or she refuses to provide an inmate with a medically prescribed diet or food adequate for the maintenance of normal health. *See, e.g.*, *Byrd v. Wilson*, 701 F.2d 592, 594–95 (6th Cir. 1983) (finding that prison officials' failure to provide medically necessary diet violated the Eighth Amendment); *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977) (holding that prison food must be adequate for a prisoner to "maintain normal health"). Plaintiff has alleged that he "notified all staff" that he was not getting enough to eat and was not receiving his medically prescribed diet (Doc. No. 11 at 1), but "received no help from the staff, after the[y] clearly s[aw] [his] meals . . ." (*Id.* at 2). Thus, reading Plaintiff's allegations in the light most favorable to him as required, Plaintiff has alleged facts that plausibly suggest, with respect to each of the Defendants, that a reasonable officer in the respective Defendants' positions would have known that his or her alleged conduct violated a right that was clearly established at the time such conduct occurred. "'Absent any factual development beyond the allegations in a complaint, [this Court] cannot fairly tell whether [this] case is "obvious" or "squarely governed" by precedent, which prevents [this Court] from determining whether the facts of this case parallel a prior decision or not' for purposes of determining whether a right is clearly established" because a reasonable officer would have known that his or her alleged conduct violated it. *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)). Therefore, Plaintiff satisfies step two (like step one), and Defendants are not entitled to dismissal on qualified immunity grounds.

## IV. Conclusion

"Although a defendant's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (internal quotation marks omitted). And in this case, the question cannot be resolved in any Defendant's favor at the motion-to-dismiss stage, for the reasons discussed herein. Therefore, Defendants' Motion to Dismiss (Doc. No. 26) will be DENIED.

An appropriate order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE