UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TERRY MOONEYHAN, | |
| Plaintiff, | Case No. 3:20-cv-01089 |
| v. | Judge Eli J. Richardson |
| | Magistrate Judge Alistair E. Newbern |
| D.D.C. NASHVILLE, TN et al., | |
| Defendants. | |

To:     The Honorable Eli J. Richardson, District Judge

## **REPORT AND RECOMMENDATION**

This action brought under 42 U.S.C. § 1983 addresses pro se and *in forma pauperis* Plaintiff Terry Mooneyhan's pretrial detention in the custody of the Davidson County Sheriff's Office (DCSO) at the Downtown Detention Center in Nashville, Tennessee (DDC). (Doc. Nos. 10, 11.) Mooneyhan alleges that Defendants Lieutenant Thomas Conrad; Sergeants Ronnie Davis, Marcus Fielden, Richard Grant, and Nicholas Pallak; and Corporal Christopher Wicking restricted his access to food and failed to provide him with a medically prescribed diet for approximately three weeks in September 2020. (Doc. Nos. 10, 11.) The defendants filed a motion for summary judgment (Doc. No. 50) supported by a memorandum of law (Doc. No. 51), a statement of undisputed material facts (Doc. No. 52), and exhibits (Doc. Nos. 53–61, 64). Mooneyhan responded in opposition to the defendants' motion (Doc. No. 67), but did not respond to the defendants' statement of undisputed material facts or provide any exhibits to support his response. The defendants filed a reply. (Doc. No. 68.)

For the reasons that follow, the Magistrate Judge will recommend that the Court grant the defendants' motion for summary judgment.

## I.      Factual Background[1]

### 1.      Mooneyhan's Alcohol Production, Disciplinary Record, and Alternative Meal Plan

Mooneyhan was held at the DDC from March 15, 2019, to March 15, 2022. (Doc. No. 52.) During that time, Mooneyhan repeatedly fermented fruit and bread from his meals to make alcohol. (Doc. No. 53.) Correctional officers caught Mooneyhan making contraband alcohol on February 18, May 26, August 15, and August 31, 2020. (Doc. No. 52.) Mooneyhan was disciplined on each occasion. (Doc. No. 55-1.) The August 31, 2020 disciplinary report includes a photograph noting "small bits of bread and apple inside sealed bag ([ ]Mooneyhan currently receives a nighttime snack consisting of a peanut butter sandwich and apple)[.]" (*Id.* at PageID# 346.)

On September 7, 2020, Wicking caught Mooneyhan making alcohol in his cell in the DDC restrictive housing unit. (Doc. No. 55-1.) Mooneyhan admitted to his illicit activities and told Wicking and other correctional officers that he had no plans to stop. (Doc. No. 56.) In a

---

[1]      The facts in this section are drawn from Mooneyhan's amended complaint (Doc. No. 10); records showing Mooneyhan's diet on September 18 and 19, 2020, that he provided as an independent filing (Doc. No. 34); the defendants' statement of undisputed material facts (Doc. No. 52); and the defendants' summary judgment exhibits (Doc. Nos. 53–61, 64).

Courts may consider complaints sworn under penalty of perjury as part of the summary judgment record because such a "verified complaint . . . carries the same weight as would an affidavit[.]" *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). To verify a complaint in federal court, a plaintiff must include a statement "in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" 28 U.S.C. § 1746(2). Mooneyhan's amended complaint uses the form pleading provided by the Court for pro se civil rights actions and is certified by the following statement: "I (we) certify under penalty of perjury that the foregoing complaint is true to the best of my (our) information, knowledge and belief." (*Id.* at PageID# 6.) The Court considers it to be a verified pleading for purposes of summary judgment.

disciplinary report of the September 7, 2020 incident, Wicking reported the discovery of alcohol in Mooneyhan's cell and requested "that [Mooneyhan] have bread removed from his diet sack and be replaced with an alternative source of carbohydrates." (Doc. No. 55-1, PageID# 347.)

Mooneyhan was issued an alternative meal plan that replaced fruit and bread with peanut butter and tortilla chips. (Doc. No. 53.) The parties disagree about who authorized the alternative meal plan. DDC Program Manager Granvisse Earl states that, because Mooneyhan repeatedly used fruit and bread to make alcohol, she authorized the alternative meal plan that Wicking requested on September 7, 2020. (Doc. No. 53.) In their statement of undisputed material facts, the defendants state that, as correctional officers, they were not authorized to change the contents of Mooneyhan's meals. (Doc. No. 52.) Mooneyhan disagrees, stating that Wicking and Grant issued his alternative meal plan. (Doc. No. 10.)

Mooneyhan alleges that this change in his diet led to "long suffering, cruel and unusual punishment of starvation" that resulted in "PTSD [from] being locked behind a door being deprived of food for a long period of time." (*Id*. at PageID# 77.) Mooneyhan states that he notified Fielden and Pallak of these circumstances on September 7, 2020, but they provided no assistance. (Doc. No. 10.) The next day, Mooneyhan notified Davis and Conrad of his situation, but they also were no help. (*Id*.) None of the defendants perceived a risk to Mooneyhan's health due to the contents of his meals. (Doc. Nos. 56–61.) The defendants further state that none of them had changed the contents of Mooneyhan's meals or otherwise prevented Mooneyhan from receiving adequate nutrition. (Doc. Nos. 56–61.)

On or about September 25, 2020, Mooneyhan's alternative meal plan was discontinued. (Doc. No. 53.) Soon after, on October 5, 2020, DCSO medical services contractor Wellpath

weighed Mooneyhan and found that he had lost one pound since his last weigh-in on August 6, 2020. (Doc. No. 52.)

### 2. Mooneyhan's Grievances

Mooneyhan filed seven grievances concerning his diet while housed at DDC, three of which are relevant to his claims in this action. (Doc. No. 52.) The defendants filed copies of the records from their internal grievance system showing Mooneyhan's grievances and the responses to them. (Doc. No. 54-3.)

On September 14, 2020, Mooneyhan submitted a grievance stating that "[t]hey ha[d] put [him] on a no bread no fruit diet due to disciplinaries but have yet to replace the nutrients" and had taken away his nighttime snack. (Doc. No. 54-3, PageID# 317.) Mooneyhan wrote that he is "on a [K]osher diet which is nothing but bread and fruit[.]" (*Id.*) Mooneyhan noted that the dietary change was particularly damaging because he "[has] C[rohn's] disease and needs the extra nutrients as mu[c]h as possible." (*Id.*) Mooneyhan's grievance was sent to Officer A. Gilbert for investigation. (Doc. No. 54-3.) The box next to "[d]ate [r]esponse [r]eceived" is marked September 30, 2020. (*Id.* at PageID# 317.) Gilbert responded that, "[o]nce approved by the medical dept. you will receive your request." (*Id.*) The grievance is marked as "[c]losed - [u]nsustained[.]" (*Id.*) The box next to "[i]nmate [n]otified?" is blank and the "[d]ate" of notification reads "00/00/0000[.]" (*Id.*) Mooneyhan did not appeal this grievance. (Doc. No. 52.)

On September 17, 2020, Mooneyhan filed a grievance stating that "[the jail] [has] to give [him] an alternative [to the bread and fruit removed from his diet] and they are not" and that "[he] [was] not getting the calories based on yalls standards." (Doc. No. 54-3, PageID# 318.) Mooneyhan's grievance was sent to Gilbert for investigation. (Doc. No. 54-3.) The box next to "[d]ate [r]esponse [r]eceived" is marked September 30, 2020. (*Id.* at PageID# 318.) Gilbert responded that he "will look into this matter to ensure that you are receiving the correct portions."

(*Id.*) The grievance is marked as "[c]losed - [u]nsustained[.]" (*Id.*) The box next to "[i]nmate [n]otified?" is blank and the "[d]ate" of notification reads "00/00/0000[.]" (*Id.*) Mooneyhan did not appeal this grievance. (Doc. No. 52.)

On September 24, 2020, Mooneyhan filed another grievance, writing that "the substitute for the bread and fruit was supposed to be peanut butter" but that "the [kitchen] is still not sending it up peanut butter as a replacement as it clearly says . . . on the diet sheet." (Doc. No. 54-3, PageID# 319.) Mooneyhan's grievance was sent to Gilbert for investigation. (Doc. No. 54-3.) The box next to "[d]ate [r]esponse [r]eceived" is marked September 30, 2020. (*Id.* at PageID# 319.) Gilbert responded that, "once apprived [sic] by the medical department you will begin to receive peanut butter." (*Id.*) The grievance is marked as "[c]losed - [u]nsustained[.]" (*Id.*) The box next to "[i]nmate [n]otified?" is blank and the "[d]ate" of notification reads "00/00/0000[.]" (*Id.*) Mooneyhan did not appeal this grievance. (Doc. No. 52.)

## II.      Procedural Background

Mooneyhan initiated this action on December 7, 2020, by filing a complaint under 42 U.S.C. § 1983 against DDC.[2] (Doc. No. 1.) The Court granted Mooneyhan's application to proceed *in forma pauperis*, screened his complaint under 28 U.S.C. § 1915(e)(2), and found that Mooneyhan's complaint failed to state a claim upon which relief could be granted because DDC is not a person who can be sued under 42 U.S.C. § 1983. (Doc. Nos. 7, 8.)

---

[2]      Under the "prison mailbox rule[,] . . . a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). Courts applying the prison mailbox rule assume, "absent contrary evidence," that an incarcerated person handed over a pleading to prison authorities "on the date he or she signed [it]." *Id*. Mooneyhan signed his complaint on December 7, 2020. (Doc. No. 1.)

The Court permitted Mooneyhan to file an amended complaint naming additional defendants. (Doc. Nos. 7, 8.) Mooneyhan filed an amended complaint naming Conrad, Davis, Fielden, Grant, Pallak, and Wicking in their individual capacities. (Doc. No. 10.) Mooneyhan alleges that he was deprived of food starting on September 7, 2022, when his alternative meal plan was issued and that his original diet was ultimately restored after he complained to medical services. (*Id.*) Mooneyhan's amended complaint requests money damages and therapy for the trauma he alleges this change in diet caused. (*Id.*) Mooneyhan later filed a letter (Doc. No. 11), which the Court construed as a supplement to the amended complaint (Doc. Nos. 12, 13). In the supplement, Mooneyhan alleges that the defendants deprived him of bread and fruit for three weeks without providing alternative food and deprived him of the medically prescribed nighttime snack he receives due to his Crohn's Disease and Hepatitis C. (Doc. No. 11.) Mooneyhan also alleges that the defendants did not restore his original diet until a nurse noticed he looked ill and initiated the change. (*Id.*)

The Court screened Mooneyhan's amended complaint and supplement and found that he had stated colorable Eighth Amendment conditions of confinement claims against the defendants.[3] (Doc. Nos. 12, 13.) The defendants filed a motion to dismiss Mooneyhan's amended complaint (Doc. No. 26), which the Court denied (Doc. Nos. 36, 37).

On November 21, 2022, the defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56 (Doc. No. 50), supported by a memorandum of law (Doc. No. 51), a

---

[3] Because Mooneyhan was a pretrial detainee at the time of the events in question, his claims are properly construed as arising under the Fourteenth Amendment. *See Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). As discussed herein, the objective prong of a Fourteenth Amendment analysis is not materially different from the analysis prescribed under the Eighth Amendment, and the resolution of Mooneyhan's claims on that basis is not altered by considering his claims as asserted under the Fourteenth Amendment.

statement of undisputed facts (Doc. No. 52), and several declarations and exhibits (Doc. Nos. 53–61, 64). The defendants argue that summary judgment is appropriate because Mooneyhan did not administratively exhaust his claims as required by the Prison Litigation Reform Act (PLRA) and because the defendants are shielded by qualified immunity because Mooneyhan cannot show, based on record evidence, that the defendants violated his rights by putting him on an alternative meal plan for roughly three weeks.[4] (Doc. No. 51.)

Mooneyhan did not file a timely response to the defendants' motion for summary judgment, and the Court ordered him to show cause by January 31, 2023, why this action should not be dismissed for failure to prosecute his claims. (Doc. No. 66.) The Court further ordered Mooneyhan to respond to the defendants' motion for summary judgment by the same date. (*Id.*) Mooneyhan responded with a letter that the Court construes as a response in opposition to the motion for summary judgment. (Doc. No. 67.) In the letter, Mooneyhan reiterates his allegations that the defendants took away his fruit and bread without providing him an adequate substitute and also denied him his medically prescribed nighttime snack. (*Id.*) Mooneyhan also argues that, while the defendants discussed his resulting weight loss in their motion, they failed to address the effect of the alternative meal plan on his Crohn's Disease and Hepatitis C. (*Id.*) Mooneyhan did not separately respond to the defendants' statement of undisputed facts.

The defendants filed a reply arguing that, because Mooneyhan failed to respond to their statement of undisputed facts, the Court should accept those facts as undisputed under Local Rule 56.01. (Doc. No. 68.) The defendants also argue that Mooneyhan fails to present any record

---

[4]     The defendants characterize Mooneyhan's Eighth Amendment claim as a claim that they were deliberately indifferent to his medical needs (Doc. No. 51). The screening order construed the claim as addressing his conditions of confinement (Doc. No. 12), as does this Report and Recommendation.

evidence to dispute the evidence they have provided in support of their motion and appears to have conceded that he did not appeal any administrative grievance that he filed related to these events. (*Id.*)

### III.    Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

8

purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

## IV.    Analysis

### A.    Local Rule 56.01 and the Defendants' Initial Burden Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 provides that a motion for summary judgment "must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Local Rule 56.01(b) exists "'to prevent parties from unfairly shifting the burdens of litigation to the court[,]'" *Matthews v. Copeland*, 286 F. Supp. 3d 912, 916 (M.D. Tenn. 2017) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)), and to ensure that a party facing a motion for summary judgment has adequate notice of and an opportunity to respond to the movant's claim that certain facts are undisputed. "Each fact must be set forth in a separate, numbered paragraph . . . [and] be supported by specific citation to the record." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). The movant must insert the word "response" after each numbered paragraph and allow the nonmoving party "sufficient space to respond to the assertion that the fact is undisputed." *Id.* "The requirement that a statement of

undisputed material facts in the described format must accompany any motion for summary judgment applies to *pro se* parties[,]" although pro se litigants are not required to provide a copy of the statement in an editable electronic format to the opposing party. *Id.*; *see also Matthews*, 286 F. Supp. 3d at 915 (finding that "'it is incumbent upon litigants, even those proceeding *pro se*, to follow the . . . rules of procedure,' and this includes 'local and state court rules'" (alteration in original) (quoting *Fields v. Cnty. of Lapeer*, No. 99-2191, 2000 WL 1720727, at *2 (6th Cir. Nov. 8, 2000))). A party opposing a motion for summary judgment must respond to each asserted fact by "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts).

The defendants have filed a statement of undisputed material facts that complies with Local Rule 56.01(b) and is supported by specific citations of the summary judgment record. (Doc. No. 52.) Mooneyhan has not responded to the defendants' statement of undisputed material facts. The defendants argue that, because Mooneyhan failed to respond to their statement of undisputed material facts, "the Court may deem the fact undisputed or grant summary judgment on the basis of the motion and supporting materials." (Doc. No. 68, PageID# 394.)

Local Rule 56.01(f) requires the Court to take an asserted undisputed fact to which no adequate response has been given as true, M.D. Tenn. R. 56.01(f) (failure to respond), but the defendants must still meet their initial burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party

fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (2022). Courts must view the moving party's evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727.1 (4th ed. updated Apr. 2022) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

The Court must therefore examine the evidence that the defendants have offered in support of their motion to determine if it satisfies their initial burden with respect to Mooneyhan's claims before considering the adequacy of Mooneyhan's response in opposition. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a

genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (holding that defendant "did not carry its initial burden of production" where evidence it produced in support of motion for summary judgment "purport[ed] to negate an essential element of plaintiffs' claim— timely notice—but . . . d[id] not actually do so").

### B. PLRA Exhaustion

The PLRA provides that "'[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Napier v. Laurel Cnty.*, 636 F.3d 218, 222 (6th Cir.2011) (quoting 42 U.S.C. § 1997e(a)). The purpose of this exhaustion requirement is to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525; *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("The point of the PLRA exhaustion requirement is to allow prison [or jail] officials 'a fair opportunity' to address grievances on the merits, to correct prison [or jail] errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." (quoting *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006))). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison [or jail] grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) ("A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution.").

"[T]he PLRA's exhaustion requirement is a strict rule, but there are a few exceptions." *Does 8–10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019). The requirement is premised "'on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.'" *Id.* (alteration in original) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). An administrative remedy is unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) "an administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use[;]" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. The Sixth Circuit requires an incarcerated person to make "'some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Napier*, 636 F.3d at 223 (quoting *Braswell v. Corr. Corp. of Am.*, No. 3:08-0691, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009), *rev'd on other grounds*, 419 F. App'x 622 (6th Cir. 2011)). If the record shows such effort, courts will assess "whether an inmate's efforts to exhaust were sufficient under the circumstances[.]" *Id.* at 224.

Failure to exhaust under the PLRA is an affirmative defense for which the defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (first quoting *Jones*, 549 U.S. at 216, and then quoting *Napier*, 636 F.3d at 225). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion.'" *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because the defendants also bear the burden of persuasion for this issue at trial, their

"initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). If the defendants meet this burden, the plaintiff must "present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 249). If a plaintiff argues that an administrative remedy was unavailable to him, the defendants continue to bear the burden of proof and "must 'present evidence showing that the plaintiff's ability to exhaust was not hindered.'" *Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) (quoting *Surles*, 678 F.3d at 457 n.10).

The defendants have provided a copy of DCSO Policy 1-3.540, which establishes a two-level process of administrative review for grievances filed by people in DCSO custody. (Doc. No. 54-1.) At the first level, a detainee must file a grievance on "DCSO forms or plain paper." (*Id.* at PageID# 288.) "Grievances about specific incidents should be filed within seven days of the incident . . . [and] [g]rievances about practices, policies, or conditions of confinement should be filed within seven days of the most recent time the inmate was affected." (*Id.*) "The grievance coordinator screens each grievance" and designates a responder, who "investigates the grievance, takes steps to address legitimate complaints, and initiates changes as appropriate." (Doc. No. 54-1, PageID# 288–89.) The responder answers the grievance and closes the grievance by selecting either "Closed-Sustained" or "Closed-Unsustained," providing the date of the response and disposition, and checking the "[i]nmate [n]otified" box. (*Id.* at PageID# 290.) The responder then "prints a copy of the 'Grievance Response Form,' and sends it to the [grievant] via DCSO's in-house mail." (*Id.*) The grievant "receives the response within seven working days from the day the coordinator processed the grievance" but, "[d]ue to the natural delay in routing, the [grievant]

generally does not receive the response form until the next business day." (*Id.*) A grievant "may file one appeal within five working days of receiving the response." (Doc. No. 54-1, PageID# 292.) If a grievance is appealed to level two, "[t]he grievance coordinator enters the appeal in the . . . grievance module" and routes the response "to the original responder's facility administrator, assistant administrator/chief of security, division director/manager, or agency chief," who then "closes the appeal within seven working days by entering his findings." (*Id.*)

The defendants argue that Mooneyhan did not pursue his grievances through DCSO's appeal process and therefore failed to administratively exhaust them. (Doc. No. 51.) Mooneyhan responds that "[the defendants] claim [he] didn't appeal, [he] would have if [he] had received a clear response[.]" (Doc. No. 67, PageID# 388.) The defendants interpret Mooneyhan's response as a "conce[ssion] that he did not appeal any jail grievance." (Doc. No. 68, PageID# 393.)

The record demonstrates a genuine dispute of material fact about whether Mooneyhan received responses to his grievances. DCSO's grievance policy requires that, after completing the grievance response and adding the date of response in the grievance report, the responder check the "[i]nmate [n]otified" box on the grievance, print a copy of the response, and send the grievance response to the grievant via DCSO mail. (Doc. No. 54-1, PageID# 290.) All of Mooneyhan's provided grievances show a response date. (Doc. No. 54-3.) However, in all of these grievances, the box next to "[i]nmate [n]otified?" is blank, and the "[d]ate" of notification reads "00/00/0000[.]" (*Id.* at PageID#s 317–323.) The defendants have not provided any other evidence, demonstrating that Mooneyhan actually received the grievance responses.

"A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox*, 851 F.3d at 590. DCSO's appeal policy allows for a grievant to "file one appeal within five working days of receiving the response." (Doc. No. 54-

1, PageID# 292). DCSO policy does not include a procedure allowing the grievant to appeal if he has not received a timely response to a grievance. Thus, there is at least a question of fact as to whether the opportunity to appeal his grievances was available to Mooneyhan. *See, e.g.*, *Lincoln v. Corizon Health, Inc.*, No. 2:21-CV-00245, 2022 WL 3648730, at \*5 (W.D. Mich. July 22, 2022) (finding that defendant had not established that plaintiff failed to exhaust his administrative remedies when a genuine issue of fact existed as to when Step II grievance was returned to plaintiff), *report and recommendation adopted*, 2022 WL 3647153 (W.D. Mich. Aug. 24, 2022).

Because there is a genuine dispute of fact as to whether the responders actually sent the grievance responses to Mooneyhan, the defendants have not met their burden to show the absence of a genuine dispute of material fact regarding non-exhaustion "and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Surles*, 678 F.3d at 455–56. The defendants are therefore not entitled to summary judgment on exhaustion grounds.

### C.    Mooneyhan's Conditions of Confinement Claims

"Section 1983 provides a civil enforcement mechanism for all inmates [and pretrial detainees] who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (second alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Mooneyhan alleges the defendants violated his rights by putting him on a deficient alternative meal plan for three weeks. (Doc. Nos. 10, 11.)

The defendants have not disputed that they are state actors for purposes of liability under § 1983, and the Courts finds that each defendant acted under color of state law within the meaning

16

of the statute. *See Cox v. Draper*, No. 2:20-CV-00081, 2022 WL 4137281, at *5 (M.D. Tenn. Sept. 12, 2022) (finding that jail administrator and jail corrections officer acted under color of state law and were therefore persons subject to suit under § 1983) (citing *Meadows v. Putnam Cnty.*, No. 2:19-cv-00006, 2020 WL 1532311, at *3 (M.D. Tenn. Mar. 31, 2020)), *report and recommendation adopted*, 2022 WL 16950275 (M.D. Tenn. Nov. 15, 2022). The only question before the Court at summary judgment is whether there are genuine issues of material fact that the defendants deprived Mooneyhan of his constitutional rights.

The defendants raise qualified immunity as an affirmative defense to Mooneyhan's claims. (Doc. No. 51.) "The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Thai*, 707 F.3d 675, 680 (6th Cir. 2013). The doctrine's purpose is to "'balance[ ] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Richko v. Wayne Cnty.*, 819 F.3d 907, 914 (6th Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[A] defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011) (citing *Pearson*, 555 U.S. at 232). Where defendants invoke qualified immunity and carry their initial summary judgment burden, "the plaintiff bears the burden to show that qualified immunity is inappropriate." *Quigley*, 707 F.3d at 681.

Even if a plaintiff can show a genuine question of material fact as to whether a defendant violated his constitutional rights, the defendant is still entitled to qualified immunity if those rights

were not clearly established at the time of violation. "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). In other words, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "The precedent clearly establishing a right can be in the form of a case of 'controlling authority or a robust consensus of cases of persuasive authority.'" *Latits v. Phillips*, 878 F.3d 541, 552 (6th Cir. 2017) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014)).

The Eighth Amendment, which applies to state and municipal governments through the Fourteenth Amendment, "prohibits 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991). Pretrial detainees like Mooneyhan are protected under the "Fourteenth Amendment, which provides that 'a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.'" *Thompson v. Cnty. of Medina, Oh.*, 29 F.3d 238, 242 (6th Cir. 1994) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Courts have long recognized that a pretrial detainee's right to adequate conditions of confinement is equivalent to  the Eighth Amendment protections available to a person convicted of a crime. *Thompson*, 29 F.3d. at 242.

"Until recently, [the Sixth Circuit] 'analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims "under the same rubric."'" *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021)). An Eighth Amendment conditions of confinement claim against an individual actor has objective and subjective components. *Wilson*, 501 U.S. 294. The objective component requires a plaintiff to show "extreme deprivations[,]" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992),

"denying 'the minimal civilized measure of life's necessities,'" *Wilson*, 501 U.S. at 298 (internal citation omitted). The subjective component requires a plaintiff to show that an "official knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). While the objective prong of the Eighth Amendment analysis still applies to Fourteenth Amendment pretrial detainee claims, the Sixth Circuit modified the subjective prong for Fourteenth Amendment claims in *Brawner v. Scott County* in light of the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Brawner*, 14 F.4th at 594–97. Under *Brawner*, a pretrial detainee alleging deliberate indifference "must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Brawner*, 14 F.4th at 596 (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). "In other words, a plaintiff must prove that the defendant acted 'deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"[5] *Greene*, 22 F.4th at 606 (alteration in original) (quoting *Brawner*, 14 F.4th at 597).

While *Brawner* addresses a deliberate indifference to medical needs claim, courts in the Sixth Circuit have also applied the modified subjective prong to pretrial detainees' conditions of confinement claims. *See, e.g.*, *Assi v. Hanshaw*, No. 1:20-CV-839, 2022 WL 4069194, at *14 (S.D. Ohio Sept. 2, 2022) (applying *Brawner*'s modification of subjective prong to a pretrial detainee's

---

[5]     The defendants cite a different formulation of this standard articulated in *Trozzi v. Lake County*, 29 F.4th 745, 757–58 (6th Cir. 2022). In *Helphenstine v. Lewis County*, the Sixth Circuit explained the *Trozzi* decision: "In *Trozzi*, the panel agreed that *Brawner* modified the subjective element . . . But based on the *Brawner* opinion itself, 'post-*Brawner* decisions, and background principles,' . . . it concluded that the subjective inquiry 'still requires consideration of an official's actual knowledge of the relevant circumstances.'" 60 F.4th 305, 316 (6th Cir. 2023) (quoting *Trozzi*, 29 F.4th at 753–755). The *Helphenstine* court went on to reiterate that *Brawner* is binding precedent and must be applied to pretrial detainees' claims brought under the Fourteenth Amendment: "Simply put, *Brawner* held that *Kingsley* required us to lower the subjective component from actual knowledge to recklessness. . . [b]ecause *Brawner* was decided before *Trozzi*, *Brawner* controls." 60 F.4th 316–317.

conditions of confinement claim at the motion to dismiss stage); *Rice v. Jones*, No. 1:22-CV-695, 2023 WL 2477594, at *11 (S.D. Ohio Mar. 13, 2023) (same), *report and recommendation adopted*, 2023 WL 3151861 (S.D. Ohio Mar. 31, 2023); *Clendenin v. Hunt*, No. 1:22-CV-996, 2023 WL 2643494, at *10 (W.D. Mich. Mar. 27, 2023) (same); *Jones v. Hopkins Cnty. Det. Ctr.*, No. 4:22-CV-P83, 2022 WL 17813154, at *2 (W.D. Ky. Dec. 19, 2022) (same).

Here, the defendants have met their burden to establish that Mooneyhan's alternative meal plan was not an extreme deprivation "denying 'the minimal civilized measure of life's necessities'" sufficient to support a claimed constitutional violation. *Wilson*, 501 U.S. at 298 (internal citation omitted). Issues with the type, preparation, or quality of prison or jail food are "'far removed from Eighth Amendment concerns.'" *Cain v. MDOC*, No. 1:07-CV-543, 2008 WL 8224197, at *27 (W.D. Mich. Mar. 31, 2008) (citing *Cunningham v. Jones,* 567 F.2d 653, 659–60 (6th Cir. 1977)), *report and recommendation adopted as modified sub nom. Cain v. Michigan Dep't of Corr.*, 2011 WL 446050 (W.D. Mich. Feb. 1, 2011). "The Eighth Amendment merely requires that [food] be prepared and served in a sanitary environment and that it be adequate to meet an inmate's essential nutritional needs." *Heinz v. Teschendorf*, No. 05-CV-73470, 2006 WL 2700813, at *8 (E.D. Mich. Sept. 19, 2006); *see also Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (affirming district court decision that providing one meal per day for fifteen consecutive days did not violate the Eighth Amendment where the one meal per day provided adequate nutrition to sustain normal health for that time period); *Devore v. Mohr*, No. 2:18-CV-559, 2019 WL 3413647, at *6 (S.D. Ohio July 29, 2019) (finding that plaintiff having food but lacking "*proper* meal" per requested Ramadan accommodations did not violate the Eighth Amendment where there was no evidence that diet was nutritionally inadequate), *report and recommendation adopted*, 2019 WL 4452884 (S.D. Ohio Sept. 17, 2019). A particular diet's inadequacy may be shown through evidence of an

incarcerated person's significant weight loss. *See, e.g.*, *Frazier v. George*, No. 1:12-CV-00128, 2014 WL 4897446, at *8 (M.D. Tenn. Sept. 30, 2014) (finding genuine dispute of material fact about whether plaintiff met the objective prong when records indicated that plaintiff lost 58 pounds in eight months); *Caldwell v. George*, No. 1:14-0019, 2015 WL 5838622, at *4 (M.D. Tenn. Oct. 7, 2015) (finding that plaintiff's 50-pound weight loss over five months could not be "deemed *de minimis*" but, without more, was inadequate to meet the objective prong), *report and recommendation adopted*, 2015 WL 6755385 (M.D. Tenn. Nov. 4, 2015).

The defendants have provided evidence to show that Mooneyhan's alternative meal plan was adequate to meet his essential nutritional needs. In a sworn declaration, Earl states that, "[i]n place of fruit and bread, [Mooneyhan's] alternative meal plan substituted peanut butter and tortilla chips." (Doc. No. 53, PageID# 275.) The alternative meal plan was in place for roughly three weeks. (Doc. No. 53.) The defendants have also presented evidence showing that Mooneyhan maintained his weight during the time he received the alternative diet. In their statement of undisputed facts, the defendants assert that, between Mooneyhan's weigh-ins on August 6, 2020, and October 5, 2020, he lost only one pound. (Doc. No. 52.) Mooneyhan's medical records support this conclusion. (Doc. No. 64-1). This evidence shows that Mooneyhan's weight remained stable while he received the challenged alternative diet.

Because Mooneyhan did not respond to the defendants' statement of undisputed material facts, the Court takes these statements as undisputed for purposes of summary judgment. M.D. Tenn. R. 56.01(f) (failure to respond).The defendants' evidence is sufficient to meet their initial burden at summary judgment to show that when on the alternative meal plan for roughly three weeks, Mooneyhan was not "deprive[d] . . . of the minimal civilized measure of life's necessities" as required to meet the objective prong of a Fourteenth Amendment conditions of confinement

claim. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The burden thus shifts to Mooneyhan to "designate facts showing that there is a genuine dispute for trial." *Celotex Corp.*, 477 U.S. at 324 (citation omitted): *see also Blizzard*, 698 F. 3d at 282.

Mooneyhan has not identified any such disputed facts or offered any evidence at summary judgment to show that the alternative meal plan was not "adequate to meet [his] essential nutritional needs." *Heinz*, 2006 WL 2700813, at *8. Mooneyhan states that he never actually received the peanut butter and tortilla chips promised as a substitution for the fruit and bread and further alleges that the defendants also took away the medically prescribed nighttime snack he receives for his Crohn's Disease and Hepatitis C. (Doc. Nos. 11, 67.) However, these statements were made in a letter and notice of filing, both unsworn, and thus, constitute unverified allegations. Such unverified statements are not considered evidence for purposes of summary judgment and cannot be considered in support of Mooneyhan's opposition to the defendants' motion. *See King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (holding that "'a verified complaint . . . satisfies the burden of the nonmovant to respond' to a motion for summary judgment, unlike 'mere allegations or denials' in unverified pleadings" (alteration in original) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc))). While Mooneyhan also alleges that he was "malnourished" and "starved" (Doc. No. 11, PageID# 82–83) and that his Crohn's Disease and Hepatitis C were affected by his altered diet (Doc. No. 67), he has not provided any evidence of weight loss or other negative health consequences. Mooneyhan has not introduced evidence to create a genuine dispute of fact as to whether the alternative meal plan was an "extreme deprivation" necessary to meet the objective prong of a conditions of confinement claim. *Hudson*, 503 U.S. 9.

There is no genuine issue of material fact as to the objective component of Mooneyhan's Fourteenth Amendment conditions of confinement claim. The Court need not consider the subjective component. *See Miles v. Kentucky Dep't of Corr.*, No. 5:16-CV-073, 2019 WL 469776, at *5 n.5 (W.D. Ky. Feb. 6, 2019) (finding it unnecessary on summary judgment to address the subjective component of Eighth Amendment claim when the objective component was not satisfied). The defendants are entitled to qualified immunity from Mooneyhan's claims against them, and summary judgment in their favor is appropriate on that basis.

## V.      Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the Court GRANT the defendants' motion for summary judgment (Doc. No. 50) and enter judgment in their favor.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 5th day of June, 2023.

ALISTAIR E. NEWBERN
United States Magistrate Judge